UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| PAUL MARTINEAU | : | JURY TRIAL DEMANDED |
| | : | |
| Plaintiff | : | CASE NO. |
| | : | |
| v. | : | |
| | : | |
| NATIONSTAR MORTGAGE, LLC | : | November 17, 2014 |
| AND OCWEN LOAN SERVICING, LLC | : | |
| | : | |
| Defendants | : | |

## COMPLAINT

Plaintiff Paul Martineau, by and through his undersigned attorneys, hereby files this Complaint against Nationstar Mortgage, LLC and Ocwen Loan Servicing, LLC ("Defendants") and in support thereof alleges and states as follows:

### INTRODUCTION

1. This is an action for damages, costs, and attorney's fees seeking relief pursuant to the Real Estate Settlement Procedures Act, 12 U.S.C. § 2601 et seq. ("RESPA"), the Connecticut Unfair Trade Practices Act, C.G.S. § 42-110a et seq. ("CUTPA"), and certain common-law claims.

### JURISDICTION AND VENUE

2. This Court has jurisdiction under 12 U.S.C. § 2614 and 28 U.S.C. § 1337(a).

3. Venue in this District is proper as the Plaintiff Paul Martineau is an individual residing in Willimantic, Connecticut, the Defendants Nationstar and Ocwen both transact business within the State of Connecticut, and the conduct complained of occurred in this District.

## PARTIES

4. The Plaintiff Paul Martineau is a natural person residing in Willimantic, Connecticut.

5. The Plaintiff is a "person" within the meaning of CUTPA and RESPA in that he is a "natural person" under C.G.S. § 42-110a(3) and an "individual" under 12 U.S.C. § 2602(5).

6. The Defendant Nationstar Mortgage, LLC ("Nationstar") is a Delaware limited liability company, engaged in the business of servicing residential mortgage loans in Connecticut, with its principal place of business located at 350 Highland Drive, Lewisville, Texas 75067.

7. The Defendant Ocwen Loan Servicing, LLC ("Ocwen") is a Delaware limited liability company, engaged in the business of servicing residential mortgage loans in Connecticut, with its principal place of business located at 1661 Worthington Road, Suite 100, West Palm Beach, Florida 33409.

8. The Plaintiff's loan is a federally related mortgage loan as defined by 12 C.F.R. § 2602(1) in that the loan is secured by a first lien on a one-family unit of residential real property and was made by the lender satisfying the requirements of 12 U.S.C § 2602(1)(B)(i) or a creditor satisfying the requirements of 12 U.S.C. § 2602(1)(B)(iv).

9. The Defendant Ocwen is a former loan servicer of the Plaintiff's loan for the purposes of 12 U.S.C. § 2605.

10. The Defendant Nationstar is a loan servicer of the Plaintiff's loan for the purposes of 12 U.S.C. § 2605.

## FACTUAL ALLEGATIONS

11. On May 6, 2013, Mr. Martineau made the last mortgage payment he would make to Ocwen in the amount of $1,098. At the time, there was no escrow shortage or deficiency on his loan account, and Mr. Martineau was current on his payments.

12. On May 16, 2013, the servicing of Mr. Martineau's mortgage loan was transferred from Ocwen to Nationstar.

13. Mr. Martineau made a payment of $1,067.90 to Nationstar during each of the following months: June 2013, July, 2013, August 2013, and September 2013.

14. In September 2013, Mr. Martineau experienced a financial hardship that caused him to miss his October, November, December mortgage payments.

15. In December 2013, Mr. Martineau attempted to make a payment of $1,067.90, but Nationstar refused the payment and instead stated that in order to reinstate the loan he had to pay a "total balance due" of $7,245.

16. Even though Mr. Martineau believed he only owed Nationstar three months of mortgage payments, totaling $3,203.70, plus applicable late charges, he made a payment of $7,245 on December 31, 2013 to Nationstar to reinstate his loan.

17. In early January 2013, Nationstar informed Mr. Martineau over the phone that due to an escrow shortage and deficiency, his new mortgage payment was $1,847.73, an increase of $779.83.

18. On or about January 30, 2014, Mr. Martineau made a payment of $1,069 to Nationstar. At the time, a Nationstar representative told Mr. Martineau that the January payment was placed in a suspense account as it was not sufficient to cover his new payment of $1,847.73.

19. Mr. Martineau sought counsel and on February 20, 2014, through counsel, sent two written inquiries to Nationstar via certified mail, and pursuant to RESPA, 12 U.S.C § 2605(e).

20. Mr. Martineau labeled the first inquiry "Notice of Error" (hereinafter, the "first notice of error") and asserted that Nationstar misapplied his monthly mortgage payments, incorrectly

calculated his arrears, and mishandled his escrow account. A true and correct copy of the first notice of error is attached hereto as Exhibit A.

21. Mr. Martineau labeled the second inquiry "Request for Information" (hereinafter, the "first request for information") and through it requested from Nationstar a mortgage transactional history for the period of January 1, 2010 to February 20, 2014. A true and correct copy of the first request for information is attached hereto as Exhibit B.

22. On March 3, 2014, Nationstar sent Mr. Martineau a letter acknowledging receipt of "correspondence dated February 20, 2014" and indicating that in accordance with RESPA, a response would be provided within 30 business days. A true and correct copy of Nationstar's March 3, 2014 letter is attached hereto as Exhibit C.

23. Again on March 12, 2014, Nationstar sent Mr. Martineau a letter acknowledging receipt of "correspondence dated February 20, 2014" regarding the mortgage loan account. A true and correct copy of Nationstar's March 12, 2014 letter is attached hereto as Exhibit D.

24. Mr. Martineau did not receive a response from Nationstar by its deadline of April 2, 2014. For this reason, on May 6, 2014, Mr. Martineau, through counsel, emailed Customer Relations Specialists Charles Mitchell (who signed the March 3, 2014 letter), and Sarah Stoneking (who signed the March 12, 2014 letter) asking for the status of Mr. Martineau's notice and request. A true and correct copy of the May 6, 2014 email is attached hereto as Exhibit E.

25. Mr. Mitchell promptly replied and informed Mr. Martineau that "this request was reassigned to Sarah Stoneking" and she would be assisting him going forward. *See* Exhibit E.

26. On May 16, 2014, Mr. Martineau sent Ms. Stoneking a follow up email asking if Nationstar would be providing a response to his written inquiries. A true and correct copy of the May 16, 2014 email is attached hereto as Exhibit F.

27. On May 20, 2014, having received no response from Nationstar, Mr. Martineau submitted a complaint with the Consumer Financial Protection Bureau (CFPB), informed it that Nationstar failed to respond to his inquiries in a timely manner, and asked the Bureau to help resolve the issue. A true and correct copy of Mr. Martineau's CFPB complaint is attached hereto as Exhibit G.

28. Nationstar responded to Mr. Martineau's inquiries on June 2, 2014, only after receiving the CFPB complaint. In its response, Nationstar indicated it received Mr. Martineau's correspondence dated May 6, 2014, conducted an investigation, and determined that no error occurred on his account regarding the change in escrow or the resulting increase in payment. A true and correct copy of the June 2, 2014 letter and its relevant enclosures are attached hereto as Exhibit H.

29. With its June 2nd response, Nationstar enclosed a copy of an Annual Escrow Account Disclosure Statement ("Escrow Disclosure") indicating an escrow deficiency of $8,949.07 that it intended to spread over 12 months causing an increase of $745.76 in Mr. Martineau's payment effective December 1, 2013. A true and correct copy of the Escrow Disclosure is attached hereto as Exhibit I.

30. Mr. Martineau did not receive this Escrow Disclosure in 2013.

31. Neither the Escrow Disclosure nor Nationstar's response to Mr. Martineau's first notice of error explain the circumstances that lead to an escrow deficiency of $8,949.07 in November 2013. The deficiency was unexpected given no deficiency existed 6 months prior, when Mr. Martineau's account was being serviced by Ocwen. *See* Exhibits H and I.

32. On June 10, 2014, Mr. Martineau disputed Nationstar's response, via the CFPB's complaint form, and again asked Nationstar to explain the large escrow deficiency or correct his account. A true and correct copy of the Dispute is attached hereto as Exhibit J.

33. On July 7, 2014, having received no response to his CFPB dispute, Mr. Martineau sent Nationstar a second inquiry, again labeled "Notice of Error" (hereinafter, the "second notice of error") asking it to explain the circumstances that led to his escrow deficiency. Mr. Martineau also sent a second request for information on the same date. A true and correct copy of the second notice of error and second request for information is attached hereto as Exhibit K.

34. According to a U.S. Postal Service return receipt, Nationstar received the second notice of error and second request for information on July 25, 2014.

35. On July 30, 2014, Nationstar sent Mr. Martineau a letter acknowledging receipt of his notice and request. A true and correct of the letter is attached hereto as Exhibit L.

36. On August 28, 2014, Nationstar responded to Mr. Martineau's second notice of error, merely indicating that after running an escrow analysis in August 2013, it determined that Mr. Martineau's account would have a deficiency after a tax disbursement. A true and correct copy of the letter and its enclosures is attached hereto as Exhibit M.

37. Nationstar again failed to correct Mr. Martineau's escrow account or provide an explanation of how such a large escrow shortage or deficiency occurred in the absence of a corresponding increase in taxes or insurance.

38. Mr. Martineau's monthly escrow payment had been $455.53 and escrow payouts for 2013 were approximately $5,800. It is inconceivable that, despite what Nationstar alleged, a $8,949.07 shortage accumulated in his escrow account.

6

**CLAIMS FOR RELIEF**

**Count I (As to Nationstar)**

VIOLATION OF RESPA

39. The Plaintiff incorporates by reference the allegations in Paragraphs 1-38 as if fully set forth herein.

40. Among the legal duties imposed on servicers by 12 U.S.C. § 2605, as amended by the Dodd-Frank Wall Street Reform and Consumer Protection Act of 2010, Pub. L. No. 111-203, 124 Stat. 1376 (July 21, 2010), is the obligation to respond to a "qualified written request" ("QWR") from a borrower either requesting correction of an error in the handling of the account or requesting specific information related to the account. *See* 12 U.S.C. § 2605(e) and (k)(1)(C).

41. Pursuant to the authority granted by 12 U.S.C. § 2605(j)(3) and § 2605(k)(1)(E), the CFPB issued regulations which went into effect January 10, 2014 and define two separate forms of borrower inquiries encompassed by 12 U.S.C. § 2605(e)—a Notice of Error, *see* Regulation X, 12 C.F.R § 1024.35, and a Request for Information, *see* Reg. X, 12 C.F.R. § 1024.36—and establishing separate procedural rules for the proper handling of each of these two forms of inquiries.

42. Mr. Martineau submitted QWRs to Nationstar on February 20, 2014 and July 7, 2014. Each inquiry included a notice of error, as defined by Reg. X, 12 C.F.R. § 1024.35(b), and a request for information, as defined by Reg. X, 12 C.F.R. § 1024.36(a).

43. Upon receipt of the notices of error, Reg. X required Nationstar conduct a reasonable investigation of the matters raised in the notice of error, and within 30 days (excluding legal public holidays, Saturdays, and Sundays) of receiving the notice of error, provide Mr. Martineau with a written notice either informing him the errors were corrected or stating that no error

occurred and advising him of his right to request relevant information and documents. *See* Reg. X, 12 C.FR. § 1024.35(e)(1) and (3).

44. Upon receipt of the requests for information, Reg. X required Nationstar provide Mr. Martineau with the requested information or conduct a reasonable search for the requested information and provide Mr. Martineau with a written notification that the requested information is not available to the servicer, within 30 days (excluding legal public holidays, Saturdays, and Sundays) of receiving the request. *See* Reg. X, 12 C.FR. §§ 1024.36(d)(1) and (2).

45. The Defendant Nationstar violated RESPA with respect to the Plaintiff's QWRs by failing to:

    a. Respond to the Plaintiff's first notice of error and first request for information within the applicable time limit in violation of Reg. X, 12 C.F.R. §§ 1024.35 (e)(3)(i)(C) and 1024.36(d)(2).

    b. Conduct a "reasonable investigation" within the meaning of Reg. X, § 1024.35(e) of the various matters raised in the Plaintiff's first and second notices of error. Had a reasonable investigation occurred, Nationstar would have discovered, among other things, that the Plaintiff's account had a negative escrow balance of $6,773.83 when Nationstar began servicing his loan on May 21, 2013. Therefore, the deficiency was not caused by a tax disbursement as the Defendant Nationstar stated in its June 2, 2014 letter. *See* Exhibit H for a detailed transaction history.

46. The Defendant's failure to comply with its obligations with regard to the Plaintiff's qualified written requests constitutes a pattern or practice of noncompliance with the requirements of 12 U.S.C. § 2605.

47. As a result of the Defendant's failure to comply with the above-described obligations, Mr. Martineau suffered actual damages including emotional distress, additional interest and fees, foreclosures costs, and damage to his credit rating.

48. In addition to actual damages, the Plaintiff is entitled to statutory damages of $2,000 for the Defendant's above-described pattern or practice of noncompliance, plus attorney fees and costs, pursuant to 12 U.S.C. § 2605(f).

### Count II (As to Ocwen)

BREACH OF CONTRACT

49. The Plaintiff incorporates by reference the allegations in Paragraphs 1-38 as if fully set forth herein.

50. On August 23, 2012, Plaintiff Paul Martineau entered into a loan modification agreement with Ocwen (the "Agreement"). A true and correct copy of the Agreement is attached hereto within Exhibit N.

51. Pursuant to the Agreement, the modified loan balance of $126,913.47 should have included all the expenses Ocwen incurred and charged to Mr. Martineau's account in connection with servicing his loan as of the date of the Agreement, August 23, 2012. *See* Exhibit N, Section 6, paragraph (c).

52. These expenses included any unpaid real estate taxes and insurance premiums Ocwen paid on Mr. Martineau's behalf. *See* Exhibit N, Summary of Modified Mortgage, paragraph 1.

53. On August 23, 2012, Mr. Martineau's account had a negative escrow balance of $9,854.09, which pursuant to the Agreement should have been included in the modified loan balance. *See* Exhibit M for a detailed account history.

54. As of October 4, 2012, the date of the last modification balance adjustment entry, an erroneous negative escrow balance of $7,137.93 remained on Mr. Martineau's account. *See* Exhibit M.

55. The Agreement between the Plaintiff and Ocwen modified his mortgage in certain ways, but did not modify the requirement under his note and mortgage that any attorney fees attributable to the enforcement of such document and charged to his account by his servicer be "reasonable" and that any other charges or fees charged to his account be proper and actually incurred.

56. The Defendant Ocwen breached the Plaintiff's note by charging his account with improper, unauthorized, and unreasonable fees of at least $7,137.93.

57. As a result of this breach of Mr. Martineau's note and modification agreement, the Defendant Ocwen is liable to the Plaintiff for actual and consequential damages, costs, and pursuant to C.G.S. § 42-150bb, attorney's fees.

**Count III (As to Nationstar)**

BREACH OF CONTRACT

58. The Plaintiff incorporates by reference the allegations in Paragraphs 1-38 and 50-54 as if fully set forth herein.

59. The Defendant Nationstar took over servicing of Mr. Martineau's mortgage loan on May 16, 2013 and fully assumed all of Ocwen's rights and responsibilities under the Agreement.

60. In early January 2014, Nationstar informed Mr. Martineau over the phone that his mortgage payment increased to $1,847.73 due to an escrow shortage and deficiency that neither servicer had notified him existed.

61. As described above, from February 20, 2014 to August 28, 2014, Mr. Martineau, through counsel, tried to obtain both an explanation and resolution of the large escrow deficiency from Nationstar.

62. Nationstar has failed to correct Mr. Martineau's escrow account, or propose a reasonable resolution despite his repeated requests via notices of error and CFPB complaints. Instead, Nationstar seeks to collect escrow advances that its predecessor Ocwen should have included in Mr. Martineau's modified loan balance in October 2012.

63. The Agreement between the Plaintiff and Ocwen modified the Plaintiff's mortgage in certain ways, but did not modify the requirement under his note and mortgage that any attorney fees attributable to the enforcement of such document and charged to his account by his servicer be "reasonable" and that any other charges or fees charged to his account be proper and actually incurred.

64. The Defendant Nationstar breached the Plaintiff's note by charging his account with improper, unauthorized, and unreasonable fees of at least $7,137.93.

65. As a result of this breach of Mr. Martineau's note and modification agreement, the Defendant Nationstar is liable to the Plaintiff for actual and consequential damages, costs, and pursuant to C.G.S. § 42-150bb, attorney's fees.

**Count IV (As to Nationstar and Ocwen)**

VIOLATION OF CUTPA

66. The Plaintiff incorporates by reference the allegations in Paragraphs 1-65 as if fully set forth herein.

67. The Defendants' actions were done in the conduct of trade or commerce.

68. Defendant Ocwen has engaged in unfair and/or deceptive acts or practices within the meaning of C.G.S. § 42-110b(a) including, but not limited to:

   a. Failing to include all expenses it had incurred and charged to the Plaintiff's account, as of the date of the Agreement, in the modified principal balance;

   b. Improperly charging fees and costs to which it was not entitled; and

   c. Failing to conduct a timely escrow account analysis and notify the Plaintiff an escrow deficiency existed within the appropriate escrow computation year in violation of RESPA regulations, specifically Reg. X, 12 C.F.R § 1024.17(c)(3) and § 1024.17(f)(5).

69. Defendant Nationstar has engaged in unfair and/or deceptive acts or practices within the meaning of C.G.S. § 42-110b(a) including, but not limited to:

   a. Improperly charging fees and costs to which it was not entitled;

   b. Failing to timely and properly respond to the Plaintiff's inquiries regarding his loan account in violation of RESPA, specifically Reg. X, 12 C.F.R § 1024.35 and § 1024.36.

   c. Failing to correct errors raised by the Plaintiff in his correspondence; and

   d. Failing to provide the Plaintiff with an initial escrow statement within 60 days of the date of the servicing transfer, despite changing his monthly escrow payment amount, in violation of Reg. X, 12 C.F.R § 1024.17(e).

70. The Defendants' actions have offended public policy, including RESPA and the servicing rules found in federal "Regulation X," as issued by the CFPB.

71. The Defendants' actions are willful, immoral, unscrupulous, unethical, and oppressive, and cause substantial injury to customers like the Plaintiff.

72. As a direct, proximate, and foreseeable result of the foregoing acts and omissions, the Plaintiff has suffered an ascertainable loss as that term is used in C.G.S. § 42-110g(a), to wit:

   a. Liability for additional interest and improper fees and charges;

   b. Default on mortgage due to the sudden increase in escrow payment; and

      c.  Expenses incurred in unsuccessfully attempting to resolve their dispute with the Defendants.

73. As a result of its violation of CUTPA, Defendants Nationstar and Ocwen are liable to the Plaintiff for actual and consequential damages, costs, and attorney's fees pursuant to C.G.S. § 42-110g(d).

74. A copy of this pleading has been mailed to the Attorney General and the Commissioner of Consumer Protection pursuant to C.G.S. § 42-100g(c).

## RELIEF

The Plaintiff Paul Martineau respectfully requests that judgment be entered against the Defendants for the following:

    A.  Statutory damages pursuant to 12 U.S.C. § 2605(f);

    B.  Actual and consequential damages;

    C.  Costs and reasonable attorney's fees pursuant to 12 U.S.C. § 2605(f)(1)(C), C.G.S § 42-150bb, and C.G.S. § 42-110g(d); and

    D.  For such other and further relief as the Court deems just and proper.

                      THE PLAINTIFF
                      PAUL MARTINEAU


                      By Counsel: /s/ Loraine Martinez
                                Loraine Martinez (ct29220)
                                Connecticut Fair Housing Center
                                221 Main Street, 4th Floor
                                Hartford, CT  06106
                                (860) 263-0732